RECEIVED
ENTERED                    SERVED ON
                    COUNSEL/PARTIES OF RECORD

FEB 2 2 2024

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
cv.
                              DEPUTY

Matthew Beasley
2190 East Mesquite Avenue
Pahrump, Nevada 89060
(702) 515-9960
Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW BEASLEY, individually and on behalf of MAXIMUS BEASLEY, a minor, and MADDEN BEASLEY, a minor;<br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; UNKNOWN SPECIAL AGENT 1, individually; UNKNOWN SPECIAL AGENT 2, individually; UNKNOWN SPECIAL AGENT 3, individually; and DOES I-XXX;<br>Defendants. | 2:24-cv-00368-CDS-BNW<br><br>**COMPLAINT FOR DAMAGES**<br><br>**Jury Demand Requested** |

COME NOW, Plaintiffs, Matthew Beasley, individually and on behalf of Maximus Beasley, a minor, and Madden Beasley, a minor, and submit this *Complaint for Damages* (hereinafter referred to as the "Complaint") and allege as follows:

### I. JURISDICTION

1. This Court is the proper jurisdiction for this Complaint as the United States of America is a Defendant herein.

### II. VENUE

2. The District of Nevada is the proper venue to bring this Complaint as at all times relevant to this Complaint, the allegations complained of herein occurred in Clark County, Nevada.

1

## III. PARTIES

3.      Plaintiff, Matthew Beasley (hereinafter referred to as "Plaintiff"), was at all times relevant to this Complaint, a resident of the County of Clark, State of Nevada and is the biological and natural father and joint legal custodian of Maximus Beasley and Madden Beasley.

4.      Plaintiff, Maximus Beasley, is the minor child of Matthew Beasley and was at all times relevant to this Complaint, a resident of the County of Clark, State of Nevada.

5.      Plaintiff, Madden Beasley, is the minor child of Matthew Beasley and was at all times relevant to this Complaint, a resident of the County of Clark, State of Nevada

6.      Defendant, United States of America (hereinafter referred to as the "USA"), is the national federal government established by the United States Constitution. Accordingly, it is subject to the limitations imposed by the Constitution – including as relevant here, the 2nd, 4th, 5th and 8th Amendments. The USA is the appropriate Defendant for Plaintiffs' claims herein under the Federal Tort Claims Act and was at all times relevant to this action, the employer of the Special Agents and Does I-XXX. The USA through its various agencies ( e.g. Department of Justice, Federal Bureau of Investigation and the United States Attorney's Office as described more particularly below) and employees (i.e. Unknown Special Agent 1, Unknown Special Agent 2, Unknown Special Agent 3 and Does I-XXX) – each of whom, for purposes of Plaintiffs' Federal Tort Claims Act claims, was acting within his/her official capacity and within the course and scope of his/her employment with the applicable federal Agency – caused acts and events to occur within this forum from which Plaintiffs' claims arose.

A.      The Department of Justice (hereinafter referred to as the "DOJ") is, and at all times material was, an executive agency of the Defendant USA; responsible for enforcement of law and the administration of Justice within the United States and doing business in this district; is the administrator for such law enforcement agencies and offices including, without limitation, the Federal

Bureau of Investigation (hereinafter referred to as the "FBI"), the United States Attorney's Office (hereinafter referred to as the "US Attorney's Office") and Does I-XXX.

7. At all times relevant to this Complaint Unknown Special Agent 1 (hereinafter collectively with the Unknown Special Agent 2 and Unknown Special Agent 3 referred to as "Special Agents") were employees of the FBI and working under the color of federal law. When the identities of the Special Agents are discovered, Plaintiffs will seek leave of the Court to amend this Complaint accordingly.

8. At all times relevant to this Complaint Unknown Special Agent 2 (hereinafter collectively with the Unknown Special Agent 1 and Unknown Special Agent 3 referred to as "Special Agents") were employees of the FBI and working under the color of federal law. When the identities of the Special Agents are discovered, Plaintiffs will seek leave of the Court to amend this Complaint accordingly.

9. At all times relevant to this Complaint Unknown Special Agent 3 (hereinafter collectively with the Unknown Special Agent 1 and Unknown Special Agent 2 referred to as "Special Agents") were employees of the FBI and working under the color of federal law. When the identities of the Special Agents are discovered, Plaintiffs will seek leave of the Court to amend this Complaint accordingly.

10. At all times relevant to this Complaint Does I-XXX are believed to be employees, agents, offices and/or agencies of the USA and are familiar with the facts and circumstances set forth herein. When the identities of the Does I-XXX are discovered, Plaintiffs will seek leave of the Court to amend this Complaint accordingly.

## IV. STATEMENT OF FACTS

11. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

12. On or about March 3, 2022 Unknown Special Agent 1, Unknown Special Agent 2 and Unknown Special Agent 3 (hereinafter collectively referred to as the "Special Agents") appeared at Plaintiff's3ome.

13. The Special Agents approached Plaintiff's front door, rang the doorbell and then immediately proceeded to open Plaintiff's front door and enter Plaintiff's home.

14. At no point did Plaintiff invite in, or give permission, to the Special Agents to enter his home.

15. By their own admission, the Special Agents were there just to interview Plaintiff and did not have a search warrant and/or an arrest warrant.

16. The Special Agents then moved forward to the Plaintiff's glass french entry doors into the main house.

17. Aware that someone was in his home, Plaintiff appeared at the glass french entry doors. When he appeared, the Special Agents were against the entry door appearing to be trying to open them.

18. At all times relevant to this Complaint, the glass french entry doors were unlocked.

19. At no time did the Plaintiff point the gun at the Special Agents and the Special Agents never identified themselves as FBI agents.

20. Within approximately five (5) seconds of arriving at the glass french entry doors, the Special Agents shot Plaintiff two (2) times.

21. Plaintiff was shot once in his right shoulder and once in his chest approximately one (1) inch from his heart.

22. Plaintiff immediately fell to the floor as a result of being shot.

23. Plaintiff laid in the same spot where he fell after being shot twice by the Special Agents bleeding from his chest and shoulder for approximately three (3) hours until medical care was finally provided.

4

24. After shooting Plaintiff, the Special Agents immediately exited Plaintiff's home.

25. At no time did the Special Agents attempt or offer to render aid to Plaintiff.

26. After a substantial period of time passed without any communication or medical care provided by the Special Agents, Plaintiff contacted 911 seeking help.

27. After three (3) hours, Plaintiff asked the FBI and/or accepted the FBI's offer for medical assistance.

28. The FBI then requested to send the SWAT team in to "secure" the scene and ensure the safety of the medical providers. Plaintiff agreed to this request so as to facilitate expedited access to medical care.

29. At no point did SWAT breach Plaintiff's home without his consent.

30. Plaintiff was thereafter transported to University Medical Center (hereinafter referred to as "UMC") where he was detained by the FBI until such time on or about March 4, 2022 when the FBI obtained an arrest warrant.

31. As a result of the Special Agents shooting him two (2) times, Plaintiff has sustained permanent nerve damage to his left shoulder, arm and hand.

32. Following his arrest, Plaintiff was ultimately transferred to Nevada Southern Detention Center (hereinafter referred to as "NSDC") on or about March 7, 2022.

33. On or about March 8, 2022 Plaintiff had his initial appearance on the charges accusing him of Assault on a Federal Officer. A hearing regarding pretrial detention was held at the same time.

34. At the hearing, the US Attorney's Office made various false statements and outright lies including, but not limited to: (1) Plaintiff pointed a gun at the Special Agents; (2) Plaintiff "barricaded" himself in his home; and (3) the SWAT team had to breach the Plaintiff's home to end the "standoff" as the FBI and US Attorney's Office have called it.

///

35. The US Attorney's Office also omitted and withheld relevant and exculpatory information from the Magistrate Judge at this hearing including, but not limited to: (1) the Special Agents entered into Plaintiff's home without his consent and/or a warrant; (2) that Plaintiff was not only in his home when him was shot, but also that he was on the other side of the glass french entry doors when he was shot by the Special Agents.

36. As a result of the misstatements, lies and omissions by the US Attorney's, Plaintiff was not given pretrial release.

37. At no point over the next approximately fourteen (14) months did the US Attorney's Office do anything to prosecute the Complaint for Assault on a Federal Officer against Plaintiff including, but not limited to providing the Plaintiff with any discovery.

38. Upon information and belief, Plaintiff alleges that the US Attorney's Office never intended to proceed and prosecute the Compliant for Assault on a Federal Officer against Plaintiff. Instead, they intended to detain Plaintiff for such time as they could prepare separate charges on allegations of financial crimes and cover up the illegal and improper actions of the Special Agents, as more fully set forth above.

39. On or about March 31, 2023 the US Attorney's Office dismissed the Complaint for Assault on a Federal Officer against the Plaintiff instead of disclosing the discovery and proceeding with a preliminary hearing.

40. As a direct result of the misrepresentations, lies and omissions of the FBI and US Attorney's Office, Plaintiff was wrongly charged and wrongly detained for approximately fourteen (14) months.

41. On or about April 7, 2023 a pretrial detention hearing was held on the allegations of financial crimes against the Plaintiff. At said hearing the US Attorney's Office reasserted the same misrepresentations and lies and omitted the same relevant and exculpatory facts.

42. Following the pretrial detention hearing the Magistrate Judge released Plaintiff; however, the US Attorney's Office appealed his decision to the District Court.

43. Thereafter, a hearing on the appeal was held and it was only at this point that the US Attorney's Office admitted some, but not all, of the misrepresentations, lies and omissions were in fact misrepresentations and lies and provided previously omitted facts such as the fact that the Plaintiff was inside his home when the Special Agents shot him two (2) times.

### 1st Claim for Relief – Excessive Force pursuant to 42 USCS § 1983 and the Federal Tort Claims Act
### (As Against the United States of America)

44. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

45. The Defendant, by and through the Special Agents, illegally and improperly entered Plaintiff's home on March 3, 2022 without permission and/or a warrant.

46. Subsequently, the Defendant encountered Plaintiff, who was armed in his home, and within five (5) seconds shot him two (2) times through the glass french entry doors.

47. As a result of the Special Agents shooting him two (2) times, Plaintiff has sustained permanent nerve damage to his left shoulder, arm and hand.

48. At all times relevant herein, the gun carried by the Plaintiff was legally owned and possessed by the Plaintiff.

49. The Defendant's use of force, by and through the Special Agents, against the Plaintiff was unreasonable and excessive.

50. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

///

///

### 2nd Claim for Relief – Assault and Battery pursuant to 42 USCS § 1983 and the Federal Tort Claims Act
### (As Against the United States of America)

51. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

52. The Defendant, by and through the Special Agents, shot Plaintiff two (2) times with the intent to harm and/or kill him.

53. Plaintiff in no way whatsoever consented to and/or acquiesced to the Special Agents shooting him.

54. As a result of the Defendant's assault and battery, as set forth more fully above, Plaintiff was physically, mentally and emotionally harmed.

55. Defendant's actions in shooting Plaintiff two (2) times were unreasonable and would offend any reasonable person.

56. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

### 3rd Claim for Relief – Malicious Prosecution pursuant to 42 USCS § 1983 and the Federal Tort Claims Act
### (As Against the United States of America)

57. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

58. On or about March 4, 2022 Defendant's made misrepresentations, lies and omitted relevant and exculpatory facts in their Complaint for Assault on a Federal Officer to obtain an Arrest Warrant against Plaintiff for the charges of Assault on a Federal Officer.

59. There was no probable cause to justify the Complaint and/or the Arrest Warrant against the Plaintiff.

///

60. Defendant made misrepresentations, lies and omitted relevant facts to the Court with malice so as to protect the Special Agents from repercussions from the illegal actions against the Plaintiff and keep Plaintiff detained while they prepared separate charges on allegations of financial crimes against him.

61. Additionally, upon information and belief, the US Attorney's Office never intended to proceed and prosecute the Complaint against Plaintiff. Rather, they intended to detain Plaintiff for such time as they could prepare charges against Plaintiff on allegations of financial crimes.

62. On or about March 31, 2023 the US Attorney's Office dismissed the Complaint for Assault on a Federal Officer against Plaintiff.

63. As a direct and proximate result of Defendant's actions, Plaintiffs have been damaged in an amount in excess of $150,000.00.

### 4th Claim for Relief – Abuse of Process pursuant to 42 USCS § 1983 and the Federal Tort Claims Act
### (As Against the United States of America)

64. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

65. The Defendant had an ulterior purpose for filing the Complaint for Assault on a Federal Officer against the Plaintiff. Rather, they would have proceeded with prosecuting the Complaint for Assault on a Federal Officer.

66. Upon information and belief, Plaintiff alleges that the FBI and US Attorney's Office never intended to proceed and prosecute the Complaint for Assault on a Federal Officer against Plaintiff. The US Attorney's Office used the Complaint to detain Plaintiff for such time as they could prepare separate charges against the Plaintiff on allegations of financial crimes.

///

///

67. Further, the US Attorney's Office made misrepresentations and lies to the Court and omitted facts so as to protect the Special Agents for their illegal and improper actions in shooting the Plaintiff two (2) times without justification.

68. Defendants actions were willful and not proper in the regular conduct of the legal process.

69. As a direct and proximate result of Defendant's actions, Plaintiffs have been damaged in an amount in excess of $150,000.00.

**5th Claim for Relief – False Imprisonment pursuant to 42 USCS § 1983
and the Federal Tort Claims Act
(As Against the United States of America)**

70. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

71. The Defendant intentionally confined and detained Plaintiff at NSDC for a period of approximately fourteen (14) months in violation of his personal liberty and without justification or probable cause.

72. The FBI and US Attorney's Office accomplished this by making misrepresentations and lies to the Court as well as omitting facts which would benefit the Plaintiff not being detained.

73. Upon information and belief, Plaintiff alleges that the FBI and US Attorney's Office perpetrated this false imprisonment for the purpose of to prepare separate charges against the Plaintiff on allegations of financial crimes and cover up the illegal and improper actions of the Special Agents.

74. Defendants actions were willful and not proper in the regular conduct of the legal process.

75. As a direct and proximate result of Defendant's actions, Plaintiffs have been damaged in an amount in excess of $150,000.00.

///

### 6th Claim for Relief – Intentional Infliction of Emotional Distress pursuant to 42 USCS § 1983 and the Federal Tort Claims Act
### (As Against the United States of America)

76. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

77. The actions of the Defendant, by and through the Special Agents, on or about March 3, 2022 in shooting the Plaintiff two (2) times through the glass french entry door and then immediately vacating his home and leaving him lying on the floor bleeding from the chest and shoulder as set forth more fully herein above, were extreme and outrageous.

78. The Defendant intentionally shot Plaintiff two (2) times, once in the chest and once in the shoulder, with the intention, or a reckless disregard for, causing Plaintiff emotional distress.

79. The Defendant's actions in shooting Plaintiff as well as failing and/or refusing to render aid caused Plaintiff to suffer extreme and sever emotional distress.

80. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

### 7th Claim for Relief – Negligence pursuant to 42USCS § 1983 and the Federal Tort Claims Act
### (As Against the United States of America)

81. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

82. The Defendant, by and through the Special Agents, had a duty to Plaintiff to render aid after shooting him two (2) times.

83. Plaintiff laid in the same spot where he was shot for approximately three (3) hours until such time as medical care was provided.

84. Defendant breached this duty by failing to render Plaintiff any aid for the gunshot woulds inflicted by the Special Agents.

85.     Instead of rendering aid, the Special Agents exited Plaintiff's home and left Plaintiff bleeding on the floor of his home from the chest and shoulder.

86.     As a result of the Special Agents shooting him two (2) times, Plaintiff has sustained permanent nerve damage to his left shoulder, arm and hand.

87.     It was the Plaintiff who was forced to seek medical assistance by calling 911 after the Special Agents shot him and exited his home presumably leaving him there to die.

88.     As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

### 8th Claim for Relief – Violation of 8th Amendment Right Against Cruel and Unusual Punishment (excessive force)
### (As Against the United States of America)

89.     Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

90.     Upon information and belief, Plaintiffs allege that Defendant, by and through the Special Agents, went to his home to interview him regarding an ongoing investigation regarding alleged financial crimes.

91.     Defendant, by and through the Special Agents, entered Plaintiffs' home through the unlocked front door with neither permission nor a warrant of any kind.

92.     The Special Agents then proceeded to a set of glass french entry doors where Plaintiff was standing on the other side.

93.     Within approximately five (5) seconds, the Special Agents, without saying anything or identifying themselves to Plaintiff, shot Plaintiff two (2) times. Once to the chest and once to the shoulder.

94.     Immediately thereafter, the Special Agents vacated the Plaintiff's home and left him laying on the floor of his home bleeding out of his chest and shoulder presumably to die.

95. As a result of the Special Agents shooting him two (2) times, Plaintiff has sustained permanent nerve damage to his left shoulder, arm and hand.

96. The Special Agents acted as judge, jury and executioner and doled out cruel and unusual punishment to the Plaintiff.

97. The actions of the Defendants, by and through the Special Agents, violated Plaintiffs' Constitutional Rights and were done as they were agents of the FBI acting under the color of federal law.

98. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

### 9th Claim for Relief – Violation of 4th Amendment Right Against Unreasonable Search and Seizure – Bivens Claim
### (As Against the Special Agents)

99. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

100. As set forth more specifically hereinabove, the Special Agents violated Plaintiff's 4th Amendment Right against unreasonable search and seizure in multiple ways including, but not limited to entering Plaintiff's home through the front door without permission and/or a warrant as well as by shooting Plaintiff two (2) times through his glass french entry doors.

101. The actions by the Special Agents violated the Plaintiffs' Constitutional right and were done while the Special Agents were acting under the color of federal law.

102. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

///

///

///

13

### 10th Claim for Relief – Violation of 4th Amendment Right Against Unreasonable Search and Seizure (excessive force) – Bivens Claim
### (As Against the Special Agents)

103. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

104. Upon information and belief, Plaintiffs allege that Defendant, by and through the Special Agents, went to his home to interview him regarding an ongoing investigation of alleged financial crimes.

105. Defendant, by and through the Special Agents, entered Plaintiffs' home through the unlocked front door with neither permission nor a warrant of any kind.

106. The Special Agents then proceeded to a set of glass french entry doors where Plaintiff was standing on the other side.

107. Within approximately five (5) seconds, the Special Agents, without saying anything or identifying themselves to Plaintiff, shot Plaintiff two (2) times. Once to the chest and once to the shoulder.

108. Immediately thereafter, the Special Agents vacated the Plaintiff's home and left him laying on the floor of his home bleeding out of his chest and shoulder presumably to die.

109. The Special Agents actions were excessive and unreasonable. Further, as a result of the Special Agents shooting him two (2) times, Plaintiff has sustained permanent nerve damage to his left shoulder, arm and hand.

110. The actions of the Defendants, by and through the Special Agents, violated Plaintiffs' Constitutional Rights and were done as they were agents of the FBI acting under the color of federal law.

111. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

### 11th Claim for Relief – Violation of 5th Amendment Right for
### Procedural Due Process – Bivens Claim
### (As Against the Special Agents)

112. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

113. The Special Agents entered Plaintiffs' home without permission and/or a warrant and shot him two (2) times through his glass french entry doors before leaving as set forth more specifically hereinabove.

114. Upon information and belief, the Special Agents only went to Plaintiffs' home for an informal interview, yet within approximately five (5) seconds, and without saying anything to Plaintiff, the Special Agents shot him two (2) times.

115. The Special Agents' actions deprived the Plaintiff of his Constitutional right to his liberty, and almost his life, without the due process of law.

116. The actions of the Special Agents violated Plaintiffs' Constitutional Rights and were done as they were agents of the FBI acting under the color of federal law.

117. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

### 12th Claim for Relief – Violation of 8th Amendment Right Against
### Cruel and Unusual Punishment – Bivens Claim
### (As Against the Special Agents)

118. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

119. Upon information and belief, Plaintiffs allege that the Special Agents, went to his home to interview him regarding an ongoing criminal investigation.

120. The Special Agents, entered Plaintiffs' home through the unlocked front door with neither permission nor a warrant of any kind.

121. The Special Agents then proceeded to a set of glass french entry doors where Plaintiff was standing on the other side.

122. Within approximately five (5) seconds of appearing at the glass french entry doors, the Special Agents, without saying anything or identifying themselves to Plaintiff, shot Plaintiff two (2) times. Once to the chest and once to the shoulder.

123. Immediately thereafter, the Special Agents vacated the Plaintiff's home and left him laying on the floor of his home bleeding out of his chest and shoulder presumably to die.

124. The Special Agents acted as judge, jury and executioner and doled out cruel and unusual punishment to the Plaintiff.

125. Shooting the Plaintiff two (2) times without cause or any justification whatsoever was cruel and unusual punishment in itself, but even worse was the Special Agents failure and/or refusal to render aid to the Plaintiff.

126. The actions of the Defendants, by and through the Special Agents, violated Plaintiffs' Constitutional Rights and were done as they were agents of the FBI acting under the color of federal law.

127. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

### 13th Claim for Relief – Loss of Consortium on behalf of Maximus Beasley and Madden Beasley
### (as to Plaintiffs Malicious Prosecution, Abuse of Process and False Imprisonment claims)
### (Against the United States of America)

128. Plaintiffs repeat and reallege each and every allegation set forth herein and further allege as follows:

///

///

129. Due to the Defendant's actions regarding the Malicious Prosecution and Abuse of Process claims of the Plaintiff as set for more fully above in Plaintiff's 3rd, 4th and 5th Claims for Relief, Plaintiff's two (2) minor children suffered a loss of love, affection, protection, support, services and companionship from their father for approximately fourteen (14) months.

130. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in an amount in excess of $150,000.00.

## V. PRAYER

THEREFORE, based upon the foregoing, the Plaintiffs reasonably and respectfully pray that this Court find as follows:

1. On Plaintiff's **1st Claim for Relief for Excessive Force** in favor of the Plaintiff in an amount in excess of $150,000.00.

2. On Plaintiff's **2nd Claim for Relief for Assault and Battery** in favor of the Plaintiff in an amount in excess of $150,000.00.

3. On Plaintiffs' **3rd Claim for Relief for Malicious Prosecution** in favor of the Plaintiff in an amount in excess of $150,000.00.

4. On Plaintiffs' **4th Claim for Relief for Abuse of Process** in favor of the Plaintiff in an amount in excess of $150,000.00.

5. On Plaintiffs' **5th Claim for Relief for False Imprisonment** in favor of the Plaintiff in an amount in excess of $150,000.00.

6. On Plaintiff's **6th Claim for Relief Intentional Infliction of Emotional Distress** in favor of the Plaintiff in an amount in excess of $150,000.00.

7. On Plaintiff's **7th Claim for Relief for Negligence** in favor of the Plaintiff in an amount in excess of $150,000.00.

///

8.      On Plaintiff's **8ᵗʰ Claim for Relief for Violation of 8ᵗʰ Amendment Right Against Cruel and Unusual Punishment (excessive force)** in favor of the Plaintiff in an amount in excess of $150,000.00.

9.      On Plaintiff's **9ᵗʰ Claim for Relief for Violation of 4ᵗʰ Amendment Right Against Unreasonable Search and Seizure** in favor of the Plaintiff in an amount in excess of $150,000.00.

10.     On Plaintiff's **10ᵗʰ Claim for Relief for Violation of 4ᵗʰ Amendment Right Against Unreasonable Search and Seizure (excessive force)** in favor of the Plaintiff in an amount in excess of $150,000.00.

11.     On Plaintiffs' **11ᵗʰ Claim for Relief for Violation of 5ᵗʰ Amendment Right for Procedural Due Process** in favor of the Plaintiff in an amount in excess of $150,000.00.

12.     On Plaintiff's **12ᵗʰ Claim for Relief for Violation of 8ᵗʰ Amendment Right Against Cruel and Unusual Punishment** in favor of the Plaintiff in an amount in excess of $150,000.00.

13.     On Plaintiffs' **13ᵗʰ Claim for Relief for Loss of Consortium** on behalf of Maximus Beasley and Madden Beasley in favor of Plaintiffs in an amount in excess of $150,000.00.

RESPECTFULLY submitted this 16ᵗʰ day of February, 2024.

_____
MATTHEW BEASLEY