**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MATTHEW BEASLEY,<br><br>Plaintiff<br><br>v.<br><br>UNITED STATES OF AMERICA, GRAHM CODER, ROBERT SCOTT, and JAMES MOLLICA, JR.,<br><br>Defendants | Case No.: 2:24-cv-00368-APG-BNW<br><br>**Order Granting Motion to Dismiss**<br><br>[ECF No. 44] |

Matthew Beasley, proceeding pro se, is a detainee at Nevada Southern Detention Center. ECF No. 32 at 5, 7. He sues the United States of America and three Federal Bureau of Investigation agents, Grahm Coder, Robert Scott, and James Mollica, Jr., each in their individual capacity. *Id.* at 7–14. Beasley brings six claims under the Federal Tort Claims Act (FTCA) and two claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The United States moves to dismiss, joined by the FBI agents. ECF Nos. 44; 56.

I grant the motion to dismiss. I dismiss the FTCA claims without prejudice for lack of subject matter jurisdiction. I dismiss the two *Bivens* claims with prejudice because they arise in a new context and special factors counsel against judicial creation of a new *Bivens* remedy. Because amendment would be futile, I deny Beasley's request for leave to amend.

## I. BACKGROUND

In his first amended complaint, Beasley alleges that on March 3, 2022, three FBI special agents arrived at his home to interview him in connection with an investigation. ECF No. 32 at 3. After they entered a portion of his home without permission or a warrant, Beasley met them at a

set of glass French entry doors, which marked the entry to his main home. *Id.* at 3–4. Beasley alleges that he was carrying a gun, but he never pointed it in the officers' direction. *Id.* at 4. According to Beasley, the agents did not identify themselves as FBI agents, and within seconds of arriving at the doors two of the FBI agents shot Beasley through the glass . *Id.* Beasley sustained two gunshot wounds, one to his right shoulder and the other to his chest. *Id.*

Beasley filed an administrative claim with the General Counsel of the United States Department of Justice and the United States Marshals Service on February 7, 2024. ECF No. 9 at 1. Fifteen days later, he filed his initial complaint in this case, along with an application for leave to proceed *in forma pauperis*. ECF No. 2.

On August 30, 2024, Magistrate Judge Weksler issued a screening order recommending that seven of Beasley's claims be allowed to proceed. ECF No. 10 at 9–11. Judge Weksler concluded that Beasley had exhausted his administrative remedies because by that point more than six months had passed since he filed an administrative claim with the Department of Justice. *Id.* at 4-5. Because no party objected to Judge Weksler's recommendation to allow the FTCA claims to proceed, I did not review that portion of her report. ECF No. 22 at 2 (addressing only Beasley's objection that he should be allowed to represent his minor children); *see also* 28 U.S.C. § 636(b)(1) (requiring district courts to "make a de novo determination of those portions of the report or specified proposed findings to which objection is made"); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise") (emphasis in original).

All of Beasley's claims fall under either the FTCA or *Bivens*. His FTCA claims against the United States assert assault and battery, malicious prosecution,[1] abuse of process, false imprisonment, intentional infliction of emotional distress, and negligence. His two *Bivens* claims against the FBI agents assert unreasonable search and seizure and excessive force. The United States moves to dismiss each of these claims, and the FBI agents join the motion. ECF Nos. 44; 56.

## II. ANALYSIS

Federal courts are presumptively without jurisdiction over civil actions unless the party asserting jurisdiction meets its burden to prove subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because subject matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quotation omitted). Accordingly, subject matter jurisdiction may be raised by either party at any point during the litigation through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id.* at 506.

Further, under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such allegations

---

[1] The United States argues that the "Report & Recommendation stated explicitly that the Malicious Prosecution claim in the original complaint should 'be dismissed with prejudice.' . . . Probably inadvertently, the First Amended Complaint still contains the claim for malicious prosecution." ECF No. 44 at 4 (citation omitted). Beasley did not respond. The United States is correct that the malicious prosecution claim in the original complaint, brought under § 1983 and the Fourth Amendment, was dismissed because "constitutional claims cannot be pursued under the FTCA." ECF No. 10 at 5. Although the amended complaint is not clear about the source of law for the malicious prosecution claim, Beasley can bring a state law malicious prosecution claim under the FTCA. *See LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (setting forth the elements of a malicious prosecution claim). The allegations of a pro se complaint "are held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotation omitted). Thus, I liberally construe the claim as one brought under state law, though it does not alter the outcome.

must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. Instead, the complaint must include "a short and plain statement of the claim" that shows the plaintiff "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id.* (simplified). In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l,* 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior,* 876 F.3d 1144, 1163 (9th Cir. 2017).

I must "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). I apply this policy "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). I consider "five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls*., 655 F.3d 984, 995 (9th Cir. 2011).

**A. FTCA Claims**

The FTCA statutorily waives federal sovereign immunity in limited circumstances, making the United States liable "to the same extent as a private individual" for certain torts of its officers and employees. 28 U.S.C. § 2674; *United States v. Orleans*, 425 U.S. 807, 813 (1976). But where a tort claim against the United States falls outside the FTCA's scope, the United States retains its sovereign immunity, and I do not possess subject matter jurisdiction. *See Morales v. United States*, 895 F.3d 708, 713 (9th Cir. 2018) (explaining that "if there is no waiver [of sovereign immunity], the court lacks subject matter jurisdiction").

Here, I lack jurisdiction because Beasley failed to exhaust his administrative remedies, a prerequisite to subject matter jurisdiction under the FTCA. The statutory text provides, in relevant part:

> An action shall not be instituted upon a claim against the United States for money damages … unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). In other words, a plaintiff may only "institute[]" an FTCA "action" in federal district court once they have submitted an administrative claim and either (a) received a final denial from the appropriate agency, or (b) six months have passed since the submission of the claim. *Id.*

The parties do not dispute that Beasley properly filed an administrative claim with the Department of Justice on February 7, 2024 and received no final disposition. Rather, they dispute when Beasley "instituted" his "action" in federal court. The United States argues that Beasley instituted his action on February 22, 2024 (15 days after filing his administrative claim) when he filed his application to proceed *in forma pauperis* and attached his initial complaint invoking the FTCA's jurisdiction. ECF No. 2-1 at 7–22. In response, Beasley points to Judge Weksler's report and recommendation that I accepted, which states that "the Court takes judicial notice of the documents filed at ECF No. 9 indicating that more than 6 months have passed since Plaintiff presented the claims to the Department of Justice." ECF No. 10 at 4–5. Therefore, Beasley argues, "[t]he USA's motion to dismiss is not the proper method to overturn the Court's previous ruling" and the issue "is more properly submitted on appeal to the [Ninth] Circuit." ECF No. 48 at 7.

"[T]he administrative claim requirements of 28 U.S.C. § 2675(a) are jurisdictional in nature, and thus must be strictly adhered to." *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992). Even a pro se plaintiff "must strictly adhere" to the administrative exhaustion requirement, a "mandatory, jurisdictional prerequisite to filing suit." *Bishop v. United States Postal Serv.*, No. 3:24-cv-02266-RBM-AHG, 2025 WL 1929946, at *2 (S.D. Cal. July 14, 2025).

Thus, notwithstanding my earlier acceptance of Judge Weksler's report and recommendation, I cannot retain subject matter jurisdiction where it does not exist. And here, I have no subject matter jurisdiction because Beasley's "action" was "instituted" upon his filing of the initial complaint in federal court 15 days after filing his administrative claim.

In *McNeil v. United States*, the Supreme Court dealt with a similar situation. 508 U.S. 106 (1993). A pro se plaintiff filed an administrative claim but subsequently filed suit in federal court invoking the court's FTCA jurisdiction before the six-month window had expired. *Id.* at 107–08. Interpreting § 2675(a), the Court held that "the normal interpretation of the word 'institute' is synonymous with the words 'begin' and 'commence.' The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." *Id.* at 112; *see also* Fed. R. Civ. P. 3 (stating that a "civil action is commenced by filing a complaint with the court").

The Court noted that every premature filing "under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions. . . . The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command." *McNeil*, 508 U.S. at 112 (internal footnote omitted). The Court also explicitly applied this rule with equal force to pro se litigants. *See id.* at

113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Courts routinely recognize the distinction between the date on which a plaintiff instituted an FTCA action and the date on which they filed the operative complaint. *See Lamb v. Millennium Challenge Corp.*, 573 F. Supp. 3d 346, 357 (D.D.C. 2021) ("Although a plaintiff can often cure a pleading defect by amending the complaint, an amended or supplemental complaint cannot change when a plaintiff brought his action.") (quotation omitted).

Beasley instituted this action on February 22, 2024 when he filed his initial complaint claiming relief under the FTCA. That was less than six months after he filed his administrative claim. Neither the screening order nor the first amended complaint changes this fact. Beasley failed to exhaust his administrative remedies before initiating this case.

The Ninth Circuit has occasionally allowed plaintiffs to save FTCA claims by amending the complaint. For example, in *Valadez-Lopez v. Chertoff*, the Ninth Circuit held that "[t]here is nothing in the statute or our case law that would prevent a plaintiff from amending an existing complaint asserting non-FTCA claims to name the United States as a defendant and include FTCA claims once those claims have been administratively exhausted." 656 F.3d 851, 856 (9th Cir. 2011). The court distinguished between the plaintiff in *McNeil*, who invoked the federal court's jurisdiction under the FTCA before exhausting his administrative remedies, and the plaintiff in *Valadez-Lopez*, who "'invoked the federal court's jurisdiction under the FTCA' in his amended complaint after he exhausted his administrative remedies." *Id.* (quoting *McNeil*) (emphasis removed).

Like *McNeil* and unlike *Valadez-Lopez*, Beasley prematurely invoked FTCA jurisdiction in his February 22, 2024 filing. For that reason, I dismiss Beasley's FTCA claims without

prejudice for lack of subject matter jurisdiction.[2] I also deny Beasley's request for leave to amend, as amendment would be futile.[3]

**B. *Bivens* Claims[4]**

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court allowed a plaintiff to seek monetary damages from individual federal officers for alleged Fourth Amendment violations. 403 U.S. 388, 397 (1971). But over the past four decades, the Supreme Court has drastically limited the availability of *Bivens* suits, making clear "that expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quotation omitted).

I perform a two-step analysis to determine whether to recognize a *Bivens* claim. I first ask "whether the case presents 'a new *Bivens* context.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar*, 582 U.S. at 147). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (quoting *Ziglar*, 582 U.S. at 136).

---

[2] This is consistent with prior cases in this District. *See, e.g.*, *O'Shaughnessy v. United States*, No. 2:20-cv-00268-WQH-EJY, 2022 WL 1265849, at *3 (D. Nev. Apr. 28, 2022) (quoting *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999)) ("Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system."); *Carr v. United States*, No. 2:20-cv-01850-GMN-NJK, 2022 WL 19973874, at *3 (D. Nev. Mar. 31, 2022) (dismissing FTCA claims for lack of subject matter jurisdiction where the plaintiff's "administrative remedies were not exhausted prior to the filing of [the] case").

[3] The United States also argues that the FTCA carveouts in 28 U.S.C. § 2680 would preclude Beasley's claims for abuse of process and false imprisonment. ECF No. 44 at 4–6. Because I lack subject matter jurisdiction, I do not address those arguments.

[4] The United States originally filed the motion to dismiss, but all three individual defendants later joined it. ECF Nos. 44; 56.

1. The complaint extends *Bivens* to a new context.

A "new context" arises when a case is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 582 U.S. at 139. The Supreme Court has provided a non-exhaustive list of examples of factors giving rise to a new context:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140.

Here, the United States argues both that FBI agents generally present a new category of defendants and that these agents were involved in a "qualitatively different aspect of police work" than the Federal Bureau of Narcotics agents in *Bivens*. ECF No. 44 at 9–11. Beasley responds that, broadly, "[a]n implied cause of action has been recognized by the Supreme Court . . . for violation of a person[']s [Fourth] Amendment right against unreasonable search and seizure." ECF No. 48 at 8-9. Further, Beasley argues, the Magistrate Judge "clearly considered all of the caselaw and tests regarding *Bivens* claims [in the report and recommendation] before allowing the claims and [its] analysis was correct." *Id.* at 10.

As noted above, because neither Beasley nor the defendants objected to this portion of the report and recommendation, I did not review it. Regardless, I can reconsider a motion at any time while I retain jurisdiction over the case. *See* Rule 54(b); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.") (emphasis omitted).

While Beasley alleges factual circumstances similar in some respects to *Bivens*, even "almost parallel circumstances" or a similar "mechanism of injury" are insufficient to support a *Bivens* claim. *Egbert*, 596 U.S. at 495 (quotation omitted). In a recent unpublished opinion, the Ninth Circuit stated that FBI agents constitute a new category of defendants, thereby creating a new context. *Massaquoi v. Fed. Bureau of Investigation*, No. 22-55448, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023) (holding that "the claim involves a new category of defendants, the FBI agents and the FBI Director"); *see also Fazaga v. Fed. Bureau of Investigation,* 124 F.4th 637, 652 (9th Cir. 2024), *judgment vacated on other grounds by* 146 S. Ct. 2160 (2026) (finding a meaningfully different context because the "case involve[d] FBI agents who conducted a counterterrorism investigation").[5]

Additionally, in *Mejia v. Miller*, the Ninth Circuit recently rejected a *Bivens* claim against individual Bureau of Land Management (BLM) officers because the plaintiff could not "point to any reason to believe that most federal agencies have the same or similar legal mandates, or more to the point, that BLM has the same mandate as agencies enforcing federal anti-narcotics law." 61 F.4th at 668. Beasley alleges the FBI agents were there to investigate financial crimes, not to enforce anti-narcotics law. ECF No. 32 at 6. He thus seeks to extend *Bivens* to a new context.

---

[5] *See also Purbeck v. Coffin*, No. 1:21-cv-00047-BLW, 2024 WL 342092, at *4 (D. Idaho Jan. 29, 2024) ( "[U]nder *Egbert*, FBI agents must be considered a new category of defendant. Put simply, an FBI agent is not a Federal Bureau of Narcotics agent."); *Jackson v. Fed. Bureau of Investigation*, 784 F. Supp. 3d 1260, 1278 (D. Ariz. 2025) (rejecting a *Bivens* claim in part because it "involve[d] an FBI agent rather than a Federal Bureau of Narcotics agent"); *Campbell v. City of Yonkers*, No. 19 CV 2117 (VB), 2023 WL 4867459, at *8 (S.D.N.Y. July 31, 2023) (finding a meaningful difference from *Bivens*, and thus a new context, because "the officers involved in *Bivens* were federal drug enforcement agents, whereas here the officers were FBI agents, task force officers, and other local law enforcement officers").

"[E]ven a modest extension [of *Bivens*] is still an extension." *Ziglar*, 582 U.S. at 147. Therefore, this case presents a new *Bivens* context.

2. Special factors counsel against recognizing a new *Bivens* claim here.

The Ninth Circuit describes new *Bivens* extensions as "dead on arrival." *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' [I] may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 493 (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

"If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* (quoting *Ziglar*, 582 U.S. at 137). "A court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* (quoting *Ziglar*, 582 U.S. at 137). Thus, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498.

Existing remedies need not "provide complete relief for the plaintiff." *Bush v. Lucas*, 462 U.S. 367, 388 (1983). Indeed, they need not provide any monetary relief at all. *Egbert*, 596 U.S. at 498. Rather, I must ask only whether the judiciary is better equipped than Congress "to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy.'" *Id.* at 493 (quoting *Bush*, 462 U.S. at 388).

Recently, in *Pettibone v. Russell*, the Ninth Circuit held that a plaintiff's ability to report alleged misconduct to the Inspector General of the Department of Homeland Security (DHS) "independently foreclose[s] a *Bivens* action" against DHS officers. 59 F.4th 449, 456 (9th Cir.

2023) (quotation omitted). The court analogized to *Egbert*, noting that the DHS misconduct reporting procedure:

> is thus comparable to the remedy deemed adequate in *Egbert*. There, the Court held that a regulation requiring an agency to investigate alleged misconduct offered an adequate alternative to *Bivens*, even though the complainant was 'not entitled to participate and ha[d] no right to judicial review of an adverse determination' . . . . The grievance procedure available in this case offers a similar right to an investigation, and a similar possibility of corrective action. Just as the availability of such a grievance procedure precluded a *Bivens* action in *Egbert*, so too does it preclude a *Bivens* action in this case.

*Id.* at 456–57 (internal citation omitted).[6]

Here, as in *Egbert* and *Pettibone*, Congress has authorized the Inspector General of the Department of Justice to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice." 5 U.S.C. § 413(b)(2). The Inspector General may "refer such allegations to the Office of Professional Responsibility or the internal affairs office of the appropriate component of the Department of Justice." *Id.* "Under the extremely deferential test of *Egbert*, [the availability of the Department of Justice Inspector General grievance process] concludes the analysis." *Van Loo v. United States*, No. 3:23-cv-05618-DGE, 2025 WL 692484, at *15 (W.D. Wash. Mar. 4, 2025); *see also Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1359–61 (10th Cir. 2024) (declining to recognize a *Bivens* action against United States Marshals Service officers because the Department of Justice Inspector General grievance process is available). Additionally, Congress has established limited damages remedies to supplement the Inspector General process. *See* 31 U.S.C. § 3724(a) (allowing the Attorney General to settle personal injury cases "for not more than $50,000" for

---

[6] *See also Davis v. Dotson*, No. 20-13123, 2021 WL 5353099, at *2 (11th Cir. Nov. 17, 2021); *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *4 (6th Cir. July 25, 2023).

losses "caused by an investigative or law enforcement officer . . . who is employed by the Department of Justice acting within the scope of employment . . . ."). Congress has provided Beasley with alternative remedial structures. The presence of those structures is a special factor counseling against the extension of *Bivens* to this new context. Therefore, I decline to extend a *Bivens* remedy here.[7] I dismiss the claims with prejudice, as amendment would be futile.

**IV. CONCLUSION**

I THEREFORE ORDER that the United States' motion to dismiss (**ECF No. 44**), joined by individual defendants Grahm Coder, Robert Scott, and James Mollica, Jr., is **GRANTED**. I dismiss without prejudice Beasley's claims under the Federal Tort Claims Act for lack of subject matter jurisdiction. I dismiss with prejudice his claims under *Bivens*.

I FURTHER ORDER the clerk of court to enter judgment accordingly and to close this case.

DATED this 13th day of September, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

[7] The United States, joined by the FBI agents, makes alternative qualified immunity arguments which I do not address here. ECF No. 44 at 13–16.